1      UNITED STATES DISTRICT COURT
       NORTHERN DISTRICT OF MISSISSIPPI
2              OXFORD DIVISION

3
    UNITED STATES OF AMERICA              PLAINTIFF
4

5
    VS.                                   NO. 3:21CR107
6

7
    JAMARR SMITH                          DEFENDANT
8

9

10            SENTENCING HEARING

11
        BEFORE HONORABLE SHARION AYCOCK
12        UNITED STATES DISTRICT JUDGE

13
            Oxford, Mississippi
14            June 13, 2023

15

16  APPEARANCES:

17  For the Government:   ROBERT J. MIMS, Esquire
                          U.S. Attorney's Office
18                        900 Jefferson Avenue
                          Oxford, MS  38655
19

20  For the Defendant:    GOODLOE T. LEWIS, Esquire
                          Hickman, Goza & Spragins, PLLC
21                        P.O. Drawer 668
                          Oxford, MS  38655-0668
22

23  Court Reporter:       PHYLLIS K. McLARTY, RMR, FCRR, CCR #1235
                          Federal Official Court Reporter
24                        911 Jackson Avenue East
                          Oxford, MS  38655
25

1          (2:00 P.M.)

2          **THE COURT:**  Okay.  Tracy, you may call the case.

3          **COURTROOM DEPUTY:**  The Court calls Case Number

4    3:21CR107, United States of America versus Jamarr Smith.  This

5    is a sentencing hearing.

6          **THE COURT:**  Thank you.

7          Robert Mims represents the government in this

8    proceeding.  Goodloe Lewis represents the defendant.  Andrew

9    Fountain is our probation officer.  Mr. Smith is in the

10   courtroom ready for sentencing.

11         So, Mr. Smith, as you will recall, the jury previously

12   found you guilty of Counts 1 and 2 of the indictment, and so

13   you do understand you're here today for sentencing?

14         **THE DEFENDANT:**  Yes, ma'am.

15         **THE COURT:**  Mr. Smith, could I ask you and Mr. Lewis

16   if you would stand for the Court, please.

17         (DEFENDANT AND HIS COUNSEL COMPLIED.)

18         **THE COURT:**  Let the record reflect that I have

19   received a reference letter on behalf of Mr. Smith.  The Court

20   has also received -- actually, two reference letters.  The

21   Court has also received counselor's sentencing memorandum.  And

22   the Court has received the victim's statement.

23         So at this time -- we dealt earlier in a separate

24   hearing with the objection to the presentence report.  Do you

25   have objections to any other matters in the presentence report,

Mr. Lewis?

**MR. LEWIS:** I do not, Your Honor.

**THE COURT:** Does the Government?

**MR. MIMS:** No, Your Honor.

**THE COURT:** Thank you.

Mr. Smith, at this time, I'm going to give you an opportunity to speak. You have the opportunity to address the Court and explain or address anything you would like to prior to sentencing. Then I'm going to call upon the Government, and I will give Mr. Lewis the last word on your behalf. But I'll hear from you now if you --

**MR. LEWIS:** And, Your Honor, if I may, I have his mother, Jackie Smith, here, who I would like to call as a witness. I don't know at what point you want to do that, but I make you aware of that.

**THE COURT:** Okay. Very well. In light of that then, let's hear from her first.

(OATH WAS ADMINISTERED BY THE COURTROOM DEPUTY.)

**COURTROOM DEPUTY:** Thank you. You may take the stand.

**MR. LEWIS:** May I proceed, Your Honor?

**THE COURT:** You may.

**JACKIE SMITH, DEFENDANT'S WITNESS, AFTER BEING DULY SWORN,**

**WAS EXAMINED AND TESTIFIED AS FOLLOWS:**

**DIRECT EXAMINATION**

**BY MR. LEWIS:**

1    **Q.**    You are Jackie Smith?

2    **A.**    That's correct.

3    **Q.**    You are Jamarr Smith's mother; correct?

4    **A.**    Yes.

5    **Q.**    Where do you live?

6    **A.**    In Batesville, 210 Gordon Drive.

7    **Q.**    And what do you do for a living?

8    **A.**    I'm a criminal investigator for the district attorney's

9    office.

10   **Q.**    And how long have you been in law enforcement?

11   **A.**    Thirty-two years.

12   **Q.**    And Jamarr has basically been in your life all of his

13   life; is that correct?

14   **A.**    That's correct.

15   **Q.**    Okay.  How old is Jamarr?

16   **A.**    Thirty-eight.

17   **Q.**    And what has been Jamarr's work history?

18   **A.**    He has worked all of his life.  When they were -- he was

19   a teenager, he worked at fast-food jobs.  And as he got older,

20   he worked at two transmission shops until he went on his own

21   and started building transmissions on his own.

22   **Q.**    Okay.  And was he working steadily rebuilding

23   transmissions up until the time of his confinement in this

24   case?

25   **A.**    Yes.  Except during COVID.

1　**Q.**　Okay.  All right.  And then I know the presentence report

2　has his children.  I know -- I want to focus on his young

3　children.  How many young children does he have?

4　**A.**　Two biological and one that he's been dad to the baby

5　since he was born, a little boy.

6　**Q.**　And how old are those children?

7　**A.**　The youngest one is three.  The girls are three and six,

8　and I think the boy is eight.

9　**Q.**　Okay.  And the mother of the biological children is?

10　**A.**　Iantea Lee.

11　**Q.**　Okay.  And do you understand -- did you know she wrote a

12　letter on his behalf in this case?

13　**A.**　I did not know that.

14　**Q.**　So at the time -- or before he was confined, what was

15　your understanding of his, you know, role in his children's

16　life, the custody arrangement, that sort of thing?  What was he

17　doing for his children at that time?

18　**A.**　The children were living with him.

19　**Q.**　On a full-time basis?

20　**A.**　Yes.

21　**Q.**　Okay.  And I -- was his -- was their mother involved in

22　their raising or care?

23　**A.**　She was in the house with them also.  She was living with

24　him also.

25　**Q.**　Okay.  All right.  So now that he has been confined,

1  who -- who has custody of the children?

2  **A.**   I do.

3  **Q.**   Okay.  Is that on a full-time basis?

4  **A.**   From -- sometimes.  It all depends on what her work

5  schedule is.  She -- her work schedule is 6:00 a.m. until

6  4:00 in the afternoon for Monday through Thursday, but

7  sometimes she have to work seven days.  And I have them from

8  Monday through Thursday if she does not have to work, but if

9  she has to work on the weekend, then I have them seven days.

10  **Q.**   And that was not the situation before Jamarr was

11  confined; correct?

12  **A.**   No.

13  **Q.**   He was actively raising and taking care of his children?

14  **A.**   That's correct.

15  **Q.**   So that's been a hardship on you to have to take in his

16  children at your age and stage in life; is that correct?

17  **A.**   Yes.

18  **Q.**   Okay.  So you did mention to me that the six-year-old has

19  had some issues.  So talk about that, if you would.

20  **A.**   She -- when she talks to him on the phone, she cries and

21  say that she want her dad, and it's -- she cries for a while,

22  and it's hard for me to get her quiet.

23  **Q.**   Has it been a situation where you've considered maybe

24  trying to get her counseling or anything of that nature?

25  **A.**   Yes.

1  **Q.**   Okay.  Changing gears here, his father and what -- remind
2  the Court his father's name.

3  **A.**   Cedric Albritton.

4  **Q.**   Okay.  And Mr. Albritton, in fact, was present during his
5  trial at least at times; correct?

6  **A.**   Correct.

7  **Q.**   Okay.  Mr. Albritton lived in Georgia for a period of
8  time; is that correct?

9  **A.**   That's correct.

10  **Q.**   But he moved to Mississippi and lived with Mr. Smith;
11  correct?

12  **A.**   After he had the first stroke, that's correct.

13  **Q.**   Okay.  And around about when was that ball --

14  **A.**   That was February of last year when he had the stroke.

15  **Q.**   Okay.  February of 2022?

16  **A.**   That's correct.

17  **Q.**   And as a result of these strokes, Mr. Albritton has had
18  some cognitive and some physical difficulties; is that correct?

19  **A.**   That's correct.

20  **Q.**   And, in fact, he needs to be cared for pretty much around
21  the clock; is that correct?

22  **A.**   That's correct.

23  **Q.**   And I realize you're not -- you've not had to take on the
24  care of Mr. Albritton?

25  **A.**   No.

1  **Q.**    But Jamarr has a brother named Jarikk, J-a-r-i-k-k;

2  correct?

3  **A.**    Correct.

4  **Q.**    His twin brother?

5  **A.**    That's correct.

6  **Q.**    So what did Jarikk do in this particular situation as to

7  Mr. Albritton?

8  **A.**    The date that Jamarr was sentenced, Jarikk took custody

9  of the dad and has been taking care of him.  He has moved into

10  Jamarr's house.

11  **Q.**    Okay.  So Jarikk lived in Georgia?

12  **A.**    That's correct.

13  **Q.**    Does he have children in Georgia?

14  **A.**    He has a one-year-old in Georgia.

15  **Q.**    Okay.  Does he have a job in Georgia?

16  **A.**    Yeah, he does.

17  **Q.**    Was he a truck driver?

18  **A.**    That's correct.

19  **Q.**    Okay.  So what you're saying, just to boil this down,

20  Jarikk has had to moved to Mississippi to take care of

21  Mr. Albritton; is that correct?

22  **A.**    That's correct.

23  **Q.**    Does Jarikk need to go back to Georgia?

24  **A.**    Yes.

25  **Q.**    Okay.  Because that's how he makes a living?

1 **A.**    And that's his home now.

2 **Q.**    Right.  And he needs to take care of his child?

3 **A.**    Yes.

4         **MR. LEWIS:**  Your Honor, that's all the factual

5 information I need to get.  Thank you.

6         **THE COURT:**  Thank you.

7         Mr. Mims.

8         **MR. MIMS:**  I have no questions, Your Honor.

9         **THE COURT:**  You may step down.  Thank you, ma'am.

10         **THE WITNESS:**  Thank you.

11         **THE COURT:**  I'll hear from Mr. Smith at this time if

12 he has anything he'd like to say.

13         **THE DEFENDANT:**  Your Honor, I want to start off by

14 saying I send my deepest, most heartfelt sorrows and apologies

15 to the victim and his family.  It's obvious that a terrible

16 crime was committed.  Being it a fact that I have a 63-year-old

17 father, I can't imagine how I would feel about him being hurt

18 in that way.

19         I don't mean to sound antagonizing to the prosecution,

20 but despite the prosecutorial misconduct and coercion of

21 witnesses in this case, I ask you today, Your Honor, to judge

22 me for who I really am and not who I've been painted to be.

23         Even though I was found guilty, it's very clear that I

24 am not six feet tall, very light skinned, or have a reddish

25 beard.  In 2018 I was only 150 pounds and couldn't even grow a

1 beard.

2 I've never been convicted of a crime in my whole life,
3 and I've always worked hard and taken care of my family. I've
4 taken on a major responsibility of taking care of my father who
5 has had brain surgery and could no longer take care of himself.

6 Before my incarceration, I had custody of my two
7 youngest daughters, ages six and three. I also have a
8 seven-year-old son, seventeen-year-old son I found out about
9 last year -- he came and found me -- and a nineteen-year-old
10 daughter, who all love me very much. I am their protector and
11 their light guide. They depend on me for every little thing
12 life throws at them.

13 I was always active at the schools with my children.
14 I never missed school events with them. I am the son of a
15 highly-respected officer of the law, my mother, Jackie Smith.
16 I was raised in a loving home, and she is the reason I was
17 never in trouble with the law because she raised me and my
18 brothers to respect the law.

19 Your Honor, today I dread being back in your courtroom
20 for two reasons. Number one, I was found guilty of a crime.
21 Secondly, I had to sit here and watch my dad start to have a
22 stroke as I was carried away by the U.S. Marshals here in this
23 courtroom. I could see it in his eyes because I've been his
24 caretaker up until February 24th, 2023, the day I was ordered
25 to detention.

1             The little bit of trouble that I've encountered in

2   my -- with the law, I can't tell you what's worse, Your Honor,

3   being found guilty in a federal courtroom or watching my mother

4   and my father and children suffer from my situation -- from

5   this situation.

6             Today, Your Honor, I ask you for your compassion, your

7   leniency, and your mercy for the sake of my family and as well

8   as the victim. The victim of this crime deserves justice, Your

9   Honor. I just hope that the right people are found and brought

10   to justice for their crime.

11             Your Honor, my life and my character just does not add

12   up to the crime that I've been found guilty of, and I've been

13   praying that you see that today.

14             We all make mistakes, and we all need to be forgiven.

15   So to the prosecution, I forgive you. I've learned that

16   sometimes you have to apologize even when you haven't done

17   anything wrong just to get the next person's attention.

18             Through this situation, though it's been tough for the

19   last 18 months of my life, this journey has not been all bad

20   for me. When I got charged with this crime, my PO sent me to

21   counseling. At the time, I didn't realize I was suffering from

22   things that was hindering me in my growth from being a man,

23   father, and a son. I'm grateful now that I went because it

24   made me better at every aspect of it.

25             Your Honor, today I beg of you not to take me away

1    from my children and my family and my mother and my father that

2    need me so bad.  They have suffered a great deal since I've

3    been gone.

4         With honor, dignity, and respect, thank you, Your

5    Honor, for your service.

6         **THE COURT:**  Thank you.

7         Mr. Mims.

8         **MR. MIMS:**  Your Honor, I've got a lot of things I want

9    to touch on this afternoon.  I want to start with the things

10   that Mr. Smith said when he was speaking to the Court a minute

11   ago.

12        He talked about alleged prosecutorial misconduct.  You

13   can clearly hear from everything that he said that he has not

14   accepted responsibility one bit for this crime.

15        He makes mention that he's not been convicted of a

16   crime in his life until now, and the one thing that he said

17   that I agree with him on that I believe is true is he said "My

18   mother is the reason I've never been in trouble with the law."

19   And there is some truth to that.

20        I believe the reason that he has escaped conviction so

21   far in his life is because his mother is -- does work in law

22   enforcement over in Panola County, and to put it in plain

23   colloquial terms, I believe she runs interference for him.  And

24   that's why he has escaped conviction all of this time.

25        But the bigger point in everything that I have thought

1   from listening to Mr. Smith talk is he simply, even at this

2   date and time, has not accepted responsibility for his actions.

3   And, therefore, I don't believe he deserves any mercy or

4   consideration.

5        We've received letters from a couple of people on his

6   behalf.  I want to talk about a couple of things that come up

7   in the letters.

8        In the letter from Ms. Jacqueline Johnson, an

9   elementary school principal or assistant principal over in

10  Batesville, she talks about the fact that "I'm pleading with

11  you to consider he has a six-year-old daughter who greatly

12  depends on her father."  You heard Mr. Smith's mother talking

13  about his children as well.  You heard Mr. Smith talking about

14  his children.

15       And I see this come up all the time in all of the

16  years I've been doing this.  Everybody wants to come into court

17  and talk about their kids and how their kids need them and how

18  their kids are going to suffer if they're incarcerated.  And I

19  get it.  I understand that.

20       The problem is these defendants never want to think

21  about their kids and the effect of what's going to happen when

22  I get locked up until they're standing here in front of you

23  about to be sentenced, and then they want to beg for mercy on

24  behalf of their kids.  And I feel for the kids.  I really do.

25  I not only feel for the kids, but I feel sympathetic towards

1  Mr. Smith's mother.

2  I'm a grandfather myself now, and my oldest daughter
3  was home this weekend with my four-month-old grandbaby, and we
4  got to watch him some.  And I love having a grandbaby and
5  playing with him, but I am not cut out to raise kids at this
6  point.  I'm too old for that.  And I don't wish it on somebody
7  else to have to raise their grandkids.

8  But that's not a consideration -- or not a factor I
9  think the Court should consider in terms of sentencing.
10 Mr. Smith should have thought about his kids and what's going
11 to happen to them before he ever committed this crime.

12 You also see -- in the letter from Ms. Lee, she goes
13 on and on talking about Mr. Smith's father and how much he's
14 taken care of his father lately and how much his father needs
15 him.  And you've heard Mr. Smith's mother talk about that,
16 Mr. Smith talk about that.

17 But I believe Mr. Cobbs is probably a father too.
18 He's somebody's father.  And yet Mr. Smith participated in a
19 crime that physically and mentally traumatized somebody else's
20 father.  So I really don't give him any credit for being kind
21 to his own father when he treats other people's fathers the way
22 they treated Mr. Cobbs in this case.

23 And that brings me to my last point, is we've got a
24 victim in this case.  And I want to read to you some of the
25 testimony from Mr. Cobbs from the trial of this matter when he

described what happened to him.  He said -- he's describing what happened and talking about the assailant.

He says, "And then he hit me and told me to get back. He'll shoot me."  They apparently struggled.  The gun fell on the ground.  They were struggling.  The assailant picks up the gun.  And he says, "He picked it up and hit me."

"And so I stood up, and he told me if I didn't get down again he would kill me."  He said, "'Get down.'  So I dropped.  And then he hit me repeatedly about three or four times or even more.  So I said in my mind, if I stay here, he is going to beat my brains out."

Later on in his testimony, he's talking about what happened immediately afterwards, after he gets in his truck and he pulls to the front and he's calling for help.  And he says, "I'm sitting in the truck calling.  Face burning.  Terrified. Scared to death."

He was asked later about how has this affected you. His response was, "It hurts.  It still hurts.  And, then, when you're trying to make a living, provide for your family, an honest living, hard worker, and then something like this here happen to you.  You know, this is something you don't want to remember, but you never forget."

"Like I say, I'll never forget that day -- that day, February the 5th, 2018.  You know, it always -- and then I still have flashbacks when I get to it, but I'm more cautious

1  now, you know."

2       I believe Mr. Cobbs -- I think he's 70 right now.  He
3  would have been around 65 or so at the time this happened.
4  Mr. Smith participated in a crime, and I don't think he was the
5  one that actually used the gun and beat Mr. Cobbs.  I think
6  that was Mr. McThunel, but he participated in it.  He was a
7  part of it.  He's just as guilty as Mr. McThunel.

8       They robbed and beat a 65-or-so-year-old man who's
9  just trying to work an honest job and make a living for his
10  family.  Left him physically scarred.  He testified to having a
11  scar on his face.  Left him mentally scarred.  I don't think
12  they deserve any mercy.

13       I'm not going to sit here and ask you for an upward
14  variance because I haven't -- I haven't asked for that, and I'm
15  not asking you to put one in here now; although if I was
16  sitting up there in your place, I would probably be considering
17  it.  But I do think that the upward end of the guideline range
18  would be appropriate for Mr. Smith and all of these defendants,
19  and I would ask the Court to impose the high end of the
20  guideline range.

21       Thank you, Your Honor.

22       **THE COURT:**  Thank you.

23       **MR. LEWIS:**  Your Honor, let me make a little clearer
24  perhaps the argument that we're making -- or the position we're
25  taking concerning Mr. Smith's father.

1    As currently written, Sentencing Guideline 1B1.13

2  called "Reduction in Term of Imprisonment" under

3  18 U.S.C. 3882(c)(1)(A) (sic) permits the Court to reduce a

4  term of imprisonment for "extraordinary and compelling

5  reasons."  Now, I've kind of been wrestling with this a little

6  bit because I do think that a 3553 factor is an extraordinary

7  or compelling reason.  I think the Court is entitled --

8  empowered to reduce a sentence of imprisonment under 3553.

9  Okay?

10    And procedurally, when I read this, it occurs to me

11  that, for this to apply, a sentence must already be imposed.

12  But I'm not sure about that.  And so I feel like I've got to at

13  least make my record at this point now.

14    The proposed amendments to the sentencing guidelines

15  that are going to go into effect, I believe, this fall modify

16  1B1.13 to explicitly state that the family circumstances of the

17  defendant can be an extraordinary and compelling reason to

18  reduce the term of imprisonment under 1B1.13.  And it states

19  straight up that one of these -- one of these situations is the

20  incapacitation of the defendant's parent when the defendant

21  would be the only available caregiver for the parent.

22    So, again, I think, depending on what happens here

23  today, what I would do is file a separate motion under 1B1.13

24  for a reduction in sentence, but I guess what I'm saying is I'm

25  also asking the Court to consider that as a 3553 factor.

1            Do I make any sense --

2            **THE COURT:** Yes, sir.

3            **MR. LEWIS:** -- what I'm asking for? Okay.

4            So I don't think there's any dispute in this matter

5 that Mr. Albritton, the father of Mr. Smith, is incapacitated.

6 I attached medical records to the sentencing memo, which

7 explains that, and I think the records clearly state that he is

8 in need of treatment -- or excuse me -- care 24/7. So we are

9 asking for the Court to consider that when imposing a sentence.

10            In addition, we would just point out to the Court that

11 Mr. -- that we're not just saying that Mr. Smith has children

12 and that he has -- you know, that they love him. That's

13 obviously important, but that's -- that in and of itself is not

14 what we're saying. We're saying that Mr. Smith has obligations

15 to his children to care for them, and that's a 3553 factor,

16 Your Honor.

17            So with that said, we're asking the Court, for those

18 reasons, to take those factors into account when imposing a

19 term of imprisonment. Thank you.

20            **THE COURT:** The Court adopts the presentence

21 investigation report without change.

22            The Court has heard the objection and has sustained

23 the objection to the specific offense characteristic of

24 restraint.

25            Based upon the new guideline calculations, once

1    the Court -- since the Court has sustained the objection,

2    Mr. Smith's total offense level would be 31, criminal history

3    category I.  His guideline sentence would range from 108 up to

4    135 months, and the new fine range would be 30,000 up to

5    300,000.  Supervised release range on Count 1 is 1 to 3 years,

6    and on Count 2, it is 2 to 5 years.

7        Mr. Smith -- and I apologize.  I should have asked you

8    to stand.

9        (DEFENDANT COMPLIES.)

10   **THE COURT:**  Mr. Smith, I want to remind you that under

11   Count 1 this statute carries a term of imprisonment up to

12   5 years.  Count 2 carries a term of imprisonment of up to

13   5 years.

14       Any fine that would be imposed is -- will not be

15   imposed in this case due to his inability to pay.

16       The sentence is within the guideline range, and the

17   difference between the maximum and minimum of the guideline

18   range exceeds 24 months.

19       The specific sentence is imposed for the following

20   reasons:  The Court has heard argument of what arguably could

21   be the government not asking for an upward variance but

22   certainly asking for something close to the top of the

23   guideline range.  I have taken into consideration the

24   defendant's position of caring for his father, which I do think

25   is appropriate to consider.

1    So the Court has determined that there is some merit

2    to the 3553 factors.  However, I have a victim statement here

3    from Mr. Cobbs that is -- he does a good job in his statement

4    of identifying the anxiety that he has felt as a result of

5    this case, as a result of the beating, as a result of the

6    surprise element of being robbed in doing a job that he's done

7    day in/day out for a number of years.

8    So it does make it difficult to not take seriously

9    Mr. Cobbs's statements.  And I hope the Court has done so in

10   fashioning a sentence.

11   The total restitution in this case is 61,331.88.  Part

12   of that restitution certainly goes to the post office.  A

13   portion of that that will be set out in the judgment is for

14   some medical expenses.

15   Mr. Mims.

16   **MR. MIMS**:  Your Honor, I apologize.  I hate to

17   interrupt your train of thought.  I need to ask for some

18   clarification before we go forward.  I thought I heard you say

19   a minute ago that Count 1 carries a five-year max and Count 2

20   carries a five-year max.  I don't have any book in front of me,

21   but I just --

22   **THE COURT**:  I don't think it does either, and I am

23   literally reading from the documents, but that's not right.

24   The statutory penalties for Count 1 and 2 --

25   **MR. MIMS**:  Count 1 is conspiracy, and it should

1    be 5 -- I think Count 1 is conspiracy.  But Count 2, the

2    substantive count, should be more than 5 years.

3           **PROBATION OFFICER**:  That's correct.  25 on Count 2.

4           **THE COURT**:  I was doing the math and going, that won't

5    work.

6           **PROBATION OFFICER**:  I didn't want to interrupt you

7    midstream either, but that's correct, Your Honor.

8           **THE COURT**:  25 years on Count 2?

9           **PROBATION OFFICER**:  Yes, Your Honor.

10          **THE COURT**:  Okay.  That is incorrect on the documents,

11   but we have -- it's been brought to the Court's attention.

12          In imposing sentence, the Court has considered the

13   advisory guideline range, the statutory penalties, and the

14   sentencing factors enumerated in 18 U.S.C., Section 3553(a)(2),

15   which set forth the need for the sentence imposed to reflect

16   the seriousness of the offense, promote respect for the law,

17   and provide just punishment; to afford adequate deterrence to

18   criminal conduct; to protect the public; and to provide the

19   defendant with educational or vocational training, medical

20   care, or other correctional treatment; also to avoid

21   unwarranted sentencing disparities; and to provide restitution

22   to any victim.

23          The Court finds no reason to depart from the sentence

24   called for by the application of the guidelines inasmuch as the

25   facts as found are the kind contemplated by the sentencing

1  commission.

2  Pursuant to the Sentencing Reform Act of 1984, it is

3  the judgment of the Court that Mr. Smith is hereby committed to

4  the custody of the Bureau of Prisons to be imprisoned for a

5  term of 121 months.  That is mid-range of the guideline range

6  now that the guideline range has been modified due to the

7  Court's sustaining the objection.  This consists of 60 months

8  on Count 1 and 61 months -- is that right, Mr. Fountain -- on

9  Count 2 to be served -- no.  Let me do my math there --

10  121 months on Count 2 to be served concurrently.

11  **PROBATION OFFICER:**  Yes, Your Honor.

12  **THE COURT:**  Count 2, 121 months.

13  Upon release, the defendant shall be placed on

14  supervised release for a term of 5 years.  This consists of a

15  term of 3 years on Count 1, 5 years on Count 2, but that too is

16  to run concurrently.

17  Mr. Smith, you shall comply with the following

18  mandatory conditions:  You shall cooperate in the collection of

19  DNA as directed by your probation officer.

20  You shall comply with the standard conditions adopted

21  by this court.  All of those are printed in the presentence

22  report.  I don't expect you to remember, recall all of those,

23  but once you are released, those will be explained to you again

24  by your probation officer.

25  There are some special conditions.  That is, you shall

1  provide the probation officer with access to any requested
2  financial information because of restitution.

3       You shall not incur new credit charges or open
4  additional lines of credit without the approval of your
5  probation officer.

6       You shall participate in a program of testing and
7  treatment for substance abuse.  The details of that will be
8  worked out by your probation officer, but you'll stay in that
9  program subject to those conditions as long as your probation
10 officer feels that it's needed.

11      Mr. Smith, you shall not possess, ingest, or otherwise
12 use marijuana or marijuana products unless prescribed by a
13 licensed practitioner for legitimate medical reasons.

14      You are subject to a search condition upon release,
15 and that is that you shall submit your person, property, house,
16 residence, vehicle, papers, computers, office, electronic
17 communications or data storage devices to a search conducted by
18 the United States Probation Officer.  Your failure to submit to
19 a search may be grounds for revocation.  Wherever you are
20 residing, you are required to notify that person or persons of
21 this search condition.  This search would only take place at a
22 reasonable time and in a reasonable manner.

23      Also, you're obligated to participate in a program of
24 mental health treatment.  Again, the details of that will be
25 worked out by your probation officer, but you'll stay in the

1   program until your probation officer thinks that it's no longer
2   needed.

3       The restitution is in the amount of 61,331.88, and
4   $60,706 of that goes to the postal service.  Mr. Cobbs, the
5   victim in this case -- one of the victims, to repay him his
6   medical is 625.88.

7       Payment of restitution is due and payable in full
8   immediately.  The balance of any remaining restitution that you
9   owe after incarceration, you'll make regular monthly
10  installments of not less than 10 percent of your gross monthly
11  income but in no event less than $100 per month.  Those
12  payments would commence 60 days after you're released from
13  prison.

14      You are jointly and severally liable for the entire
15  amount of restitution with your codefendants, and that will be
16  set forth in the judgment as well.  Those two other
17  codefendants will share in the restitution payment.

18      No fine is being ordered due to your inability to pay,
19  but you do owe the special assessment of $100.  And that will
20  be for two counts; so the total that you owe is $200.

21      At this time, Mr. Smith, I'm going to advise you of
22  your right to appeal.  You have the right to appeal your
23  conviction and any sentence imposed illegally or as a result of
24  a miscalculation of the guidelines or outside the guideline
25  range or one that you feel is plainly unreasonable.  If you

cannot afford the cost of an appeal, those costs may be waived

by the Court.  If you cannot afford to hire an attorney, the

Court will appoint you an attorney for purposes of appeal.

        Do you have any questions about the judgment that has

been imposed?

        **THE DEFENDANT:**  No, ma'am, Your Honor.

        **THE COURT:**  At this point, I'll remand you to the

custody of the marshal service and -- until you are transported

to a designated facility.  Thank you.

        **MR. LEWIS:**  Your Honor, I'm sorry.

        **THE COURT:**  Yes.

        **MR. LEWIS:**  Would the Court note my objection to the

reasonableness of the sentence?

        **THE COURT:**  Yes.  Noted that the defense counsel takes

the position that the sentence is unreasonable.

        Anything else, Mr. Lewis?

        **MR. LEWIS:**  No, Your Honor.  I have nothing further.

        **THE COURT:**  Anything else, Mr. Mims?

        **MR. MIMS:**  No, Your Honor.

        **THE COURT:**  Thank you.

        **MR. LEWIS:**  He asked where he would be going.  That's

up to the Bureau of Prisons.  I suppose he could make a

request, Your Honor, on the record to be confined as close as

possible to his home of Batesville, Mississippi.  Is that

correct?

1       **THE COURT:** He may.  And though I have no control over

2   it, I will recommend it as part of the judgment.

3       **MR. LEWIS:** Thank you, Your Honor.

4       **THE COURT:** Okay.  Anything else?

5       **MR. LEWIS:** No.

6       **THE COURT:** If there's nothing more, then he's

7   remanded to the custody of the marshal service.

8       (CONCLUDED AT 2:45 P.M.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              CERTIFICATE

2

3          I, Phyllis K. McLarty, Federal Official Realtime Court

4    Reporter, in and for the United States District Court for the

5    Northern District of Mississippi, do hereby certify that

6    pursuant to Section 753, Title 28, United States Code, that the

7    foregoing 26 pages are a true and correct transcript of the

8    stenographically reported proceedings held in the

9    above-entitled matter and that the transcript page format is in

10   conformance with the regulations of the Judicial Conference of

11   the United States.

12         Witness my hand, this 29th day of August, 2023.

13

                            /s/ Phyllis K. McLarty
14                          PHYLLIS K. McLARTY, RMR, FCRR, CCR #1235
                            Federal Official Court Reporter
15

16

17

18

19

20

21

22

23

24

25